IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| PATRICIA PYNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. |
| LIBERTY SCHOOL DISTRICT, ) | |
| Serve Superintendent: ) | |
| MIKE BREWER ) | **JURY TRIAL DEMANDED** |
| 605 Conistor Lane ) | |
| Liberty, Missouri ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW Patricia Pyne ("Plaintiff") and, by and through her attorneys, states and alleges as follows for her Complaint against the above-named Defendant:

## INTRODUCTION

1. Plaintiff, while an employee of defendant Liberty School District No. 53 was subjected to unlawful discrimination based upon her disability and retaliation based upon her requests for accommodation for her disability.

2. Plaintiff seeks compensatory and punitive damages against Defendant.

## PARTIES

3. Plaintiff is now and at all times relevant to the allegations in this Complaint a resident and citizen of the State of Missouri.

4. Defendant Liberty School District No. 53 is an employer within the meaning of the Americans with Disabilities Act ("ADA").

## JURISDICTION AND VENUE

5. Jurisdiction over Plaintiff's ADA claims are based upon 28 U.S.C. § 1331. This Court has jurisdiction over Defendant because the unlawful practices alleged in this Complaint were committed in whole, or in part, in Clay County, Missouri, which lies in the Western District of Missouri.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## FACTUAL ALLEGATIONS

7. Plaintiff worked as a Special Education Teacher at Liberty High School ("LHS") for Defendant from August 2011 until June 2012.

8. Plaintiff has been diagnosed with Spina Bifida ("split spine") and Diastematomyelia ("split spinal cord"). Plaintiff uses a scooter and a cane to move from place to place. She is unable to walk without these items and her mobility is limited due to her disabilities. For example, she is unable to navigate stairs.

9. Defendant demonstrated repeated insensitivity to Plaintiff's physical limitations.

10. Spina Bifida and Diastematomyelia are disabilities that substantially limit one or more of Plaintiff's major life activities.

11. Plaintiff informed the School Principal, April Adams, that she used a scooter and a cane on her first day of work.

12. Before starting work at LHS, Plaintiff was given a class schedule that included spending three hours a day in the Special Education Learning Center ("SPED Learning Center"), a separate building from the main building that requires use of stairs to access.

13. The SPED Learning Center is where the teachers go with the student to provide one-on-one learning assistance.

14. Because Plaintiff cannot navigate stairs, she spoke with the School Principal, April Adams, about having access to the SPED Learning Center and her schedule. Adams stated that she would put in a work order to have a ramp installed in the Learning Center.

15. Instead of being able to spend time helping her students in the SPED Learning Center, she was asked to co-teach every hour with a science teacher. This was an extra duty that her SPED co-workers did not have.

16. Sometime between the end of September and the beginning of October, Plaintiff again asked Adams about the ramp. Adams said she would check on it.

17. In November, Plaintiff once again asked about the ramp and Adams said that a permit from the City had to be obtained and it was turning out to be a "bigger deal" than she had anticipated.

18. Following these multiple inquiries about the ramp, treatment of Plaintiff became more negative.

19. Plaintiff's student count for one-on-one learning went from twelve to four.

20. On February 16, 2012, Plaintiff had a meeting with Assistant Principal Gregory Mees. During the meeting, Plaintiff asked him if she was going to be back next year and Mees replied, "Yes." Plaintiff asked if she need to look for another job. Mees replied: "No, don't look for another job, you are fine."

21. On March 1, 2012, Plaintiff had her final evaluation with Mees and Adams. Adams informed Plaintiff that she was not recommending her for rehire. Plaintiff was told that she created a negative atmosphere at LHS.

22. Adams told Plaintiff that five co-workers independently came to her and complained about Plaintiff. Plaintiff asked if there was a way to fix those issues. Adams replied: "No, I think it is just part of your personality because of your life experiences."

23. About two weeks later, Plaintiff learned that Mees had gone to four of Plaintiff's co-workers and asked them to write letters about Plaintiff's alleged negativity.

24. In mid-March, a co-worker left a box in the middle of the classroom. Plaintiff tripped over the box when her cane caught its corner. She was required to be off of work for several weeks due to a serious injury to her ribs.

25. By the time of her review, Defendant still had not built a ramp to accommodate Plaintiff's disability.

26. Defendant treated its other employees without disabilities more favorably than Plaintiff. Specifically, Defendant did not terminate other non-disabled employees despite being told by administrators that they had bad attitudes.

27. Because she did not have access to the SPED Learning Center, Plaintiff was not able to build relationships with co-workers or to properly assist her students. In a sense, the Defendants set Plaintiff up for failure by not accommodating her.

28. The failure of Defendant to accommodate Plaintiff's disability segregated Plaintiff from her fellow co-workers, which limited her opportunities to forge working relationships with co-workers, which in turn led to misunderstandings and irritations with those same co-workers.

29. Additionally, Plaintiff has been told that her co-workers resented her for not working in the SPED Learning Center and have made comments about how they have to work

with Plaintiff's students. This resentment was due to a situation Plaintiff was powerless to change.

30. By not accommodating Plaintiff's disability, Defendant did not place Plaintiff on a level playing field where she could build relationships with co-workers. Defendant then used the animosity created as a result of her forced segregation against her.

## CONDITION PRECEDENT

31. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission. A copy of the charge is attached hereto as Exhibit A and is incorporated herein by reference.

32. Plaintiff received her right to sue notice pursuant to the ADA. A copy of the right to sue is attached hereto as Exhibit B and incorporated herein by reference.

33. This action as been timely filed with this Court, and Plaintiff has met all conditions precedent to filing this action.

## COUNT I
### ADA – Disability Discrimination

34. Plaintiff incorporates by reference all of the allegations in the Complaint as though fully set forth herein.

35. At all relevant times, Plaintiff was disabled within the meaning of the ADA.

36. Plaintiff was qualified to perform the essential functions of her job with the reasonable accommodation of a ramp to the SPED Learning Center.

37. Defendant terminated Plaintiff's employment because of her disability and her request for a reasonable accommodation of her disability.

38. The conduct and actions of the above-described perpetrators were performed on the basis of Plaintiff's disabilities and constituted discrimination based on disability.

39. By giving Plaintiff negative evaluations, treating non-disabled employees more favorably than Plaintiff, and discharging Plaintiff from her position because of her disability and her request for a ramp to the SPED Learning Center as an accommodation of her disability, Defendant engaged in conduct that is prohibited by the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

40. The failure of Defendant to accommodate Plaintiff's disability segregated Plaintiff from her fellow co-workers, which limited her opportunities to forge working relationships with co-workers in violation of 42 U.S.C. § 12112(b)(1).

41. Plaintiff suffered tangible adverse employment action as a result of the Defendant's conduct, by terminating her because of her disability.

42. Defendant's conduct caused Plaintiff emotional distress, including sadness, anxiety, worry, sleeplessness, and depression.

43. Defendant's treatment of Plaintiff was punitive in nature and based upon Plaintiff's status as a disabled person.

44. Supervisory and administrative level employees knew or should have known of the discrimination based on Plaintiff's disability, but failed to appropriately address the problem.

45. Obtaining a permit from the city for a ramp to the SPED Learning Center did not constitute an undue burden on Defendant.

46. The actions and conduct set forth herein were done with malice or reckless indifference for the rights of Plaintiff, and therefore Plaintiff is entitled to punitive damages from Defendant, to punish Defendant and deter others from similar conduct.

47. At all times mentioned herein, the above-referenced perpetrators were employees, supervisors, managers, agent, servants and employees of Defendant and were at all

such times acting within the course and scope of their employment, and/or their actions were expressly authorized by Defendant, thus making it liable for punitive damages under the doctrine of respondeat superior.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count I of her Complaint, for a finding that she has been subjected to unlawful discrimination prohibited by 42 U.S.C. § 12101, *et seq.*, for an award of compensatory and punitive damages, for reinstatement to her position or front pay in lieu of reinstatement, for her costs herein expended, for her reasonable attorneys' fees, and such other relief as this Court deems just and proper, including equitable relief.

## COUNT II
## ADA – Retaliation

48. Plaintiff incorporates by reference all of the allegations in the Complaint as though fully set forth herein.

49. Plaintiff engaged in protected activity by repeatedly requesting an accommodation in the form of a ramp to the SPED Learning Center to accommodate her disability.

50. The conduct and actions of the above-described perpetrators were performed on the basis of Plaintiff's disability and her request for a ramp to the SPED Learning Center as an accommodation of her disability and constituted retaliation based on protected activity.

51. By giving Plaintiff negative evaluations, treating non-disabled employees more favorably than Plaintiff, and discharging Plaintiff from her position based on her request for a ramp to the SPED Learning Center as an accommodation of her disability, Defendant engaged in conduct that is prohibited by the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

52. Plaintiff suffered tangible adverse employment action as a result of Defendant's conduct, in that she was given negative evaluations and terminated because she requested reasonable accommodations in the form of a ramp to the SPED Learning Center.

53. Defendant's conduct caused Plaintiff emotional distress, including sadness, anxiety, sleeplessness, worry, and depression.

54. Defendant's treatment of Plaintiff was punitive in nature and based upon Plaintiff's request for reasonable accommodation for her disability.

55. Supervisory and administrative level employees knew or should have known of the retaliation based on Plaintiff's request for accommodation of her disability, but failed to appropriately address the problem.

56. The actions and conduct set forth herein were done with malice or reckless indifference for the rights of Plaintiff, and therefore Plaintiff is entitled to punitive damages from Defendant, to punish it and deter others from similar conduct.

57. At all times mentioned herein, the above-referenced perpetrators were employees, supervisors, managers, agent, servants and employees of Defendant were at all such times acting within the course and scope of their employment, and/or their actions were expressly authorized by Defendant, thus making it liable for punitive damages under the doctrine of respondeat superior.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count II of her Complaint, for a finding that she has been subjected to unlawful retaliation prohibited by 42 U.S.C. § 12101, *et seq*., for an award of compensatory and punitive damages, for reinstatement to her position or front pay in lieu of reinstatement, for her costs herein expended,

for her reasonable attorneys' fees, and such other relief as this Court deems just and proper, including equitable relief.

## DEMAND FOR JURY TRIAL

Plaintiff, by and through the undersigned counsel, hereby demands a jury trial on all counts of the Complaint.

Respectfully submitted,

HOLMAN SCHIAVONE, LLC

/s/ *Amy P. Maloney*
Amy P. Maloney, Mo. # 48936
Anne Schiavone, MO Bar# 49349
Matt J. O'Laughlin, Mo. #54025
4600 Madison Avenue, Suite 810
Kansas City, MO 64112
(816) 283-8738
Fax: (816) 283-8739
amaloney@hslawllc.com
aschiavone@hslawllc.com
molaughlin@hslawllc.com

ATTORNEYS FOR PLAINTIFF